UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RONNIE JOHNS,

    Plaintiff,

v.

Case No. 2:12-cv-194
HON. R. ALLAN EDGAR

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.
_____/

# REPORT AND RECOMMENDATION

Plaintiff Ronnie Johns, an inmate currently confined at the Earnest C. Brooks Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against the Michigan Department of Corrections (MDOC), Special Activities Coordinator Michael Martin and Chaplain Thomas L. Jones. Plaintiff was incarcerated at the Kinross Correctional Facility from February 1, 2006, until October 27, 2011. Plaintiff declared that his religious preference was Buddhist on May 11, 2011. Plaintiff was a member of the Nation of Islam for 10 to 12 years before the preference change. Plaintiff requested a strict vegetarian diet on June 1, 2011.

Defendant Chaplain Jones followed prison policy procedures for determining whether a prisoner is entitled to a kosher diet and to determine specifically whether plaintiff should receive a Buddhist vegetarian diet. Plaintiff alleges that on June 9, 2011, he was called to defendant Jones's office to take a religious test. Defendant Jones submitted three questions to plaintiff. The questions were written and plaintiff provided written answers.

> 1. Briefly explain the major teachings of your designated religion.
>
> The four noble truths: 1) All existence entails suffering; 2) suffering is caused by ignorance, which gives rise to desire and illusion; 3) there's an end to suffering which is so-called Nirvana; 4) the end of suffering is by following the noble eight-fold path.
>
> The eight-fold noble path is: 1) Right speech; 2) Right view; 3) Right effort; 4) Right awareness; 5) Right meditation; 6) Right resolve; 7) Right livelihood; 8) Right conduct.
>
> 2. Why is a Strict Vegetarian diet required by this religion?
>
> As a dedicated practice to Buddhism, we do not believe in the killing of animals who suffered and died to provide us food. We do not believe in the killing of any living creature. So, to eat the flesh of an animal who suffered and died, go against the moral, spiritual, and noble path of the Buddha teachings.
>
> 3. What is a Strict Vegetarian diet? In other words, how does it differ from food otherwise provided by the institution? What types of food are not allowed?
>
> A strict vegetarian diet is one where we abstain from eating all animal products and by-products. This differs from other food provided by the institution because our food must not be prepared with the same utensils that are used to prepare meat products, nor must our food be prepared on the same platform that meat is prepared on, or cooked in a pot that previously contained meat or animal by-products. Foods like hamburger, chicken, turkey, and other foods that come from an animal or animal by-products such as cheese or dairy products.

After receiving the answers, defendant Jones submitted a written memorandum to defendant Michael Martin. In the memorandum defendant Jones questioned plaintiff's sincerity for a Buddhist vegetarian diet.

> Prisoner Johns requested in writing "to be placed on the 'Buddha Diet' as a part of practicing my religion." (See kite). I interviewed him on 6/9/11 administering the mandatory questions. (See attached questionnaire).

> His answers list the Four Noble Truths and Eight-fold Path without explanation or elaboration. His explanation of the dietary restrictions mentions the "killing" or "suffering" of "any living creature," but he does not explain why eggs or dairy would be prohibited. In the interview he only repeated that nothing that comes from an animal is allowed, including honey. In question three he makes much of the utensils used to prepare the food, rather than how the vegetable substitute, for instance, would differ from the strict vegetarian menu.
>
> Mr. Johns's store items from May show a lack of consistency between his stated beliefs and his choice of discretionary foods: purchases including Maruchan Texas Beef Ramen Soup, Maruchan Chicken Ramen Noodle Soup, Snickers (dairy), Fresh Catch Chunk Light Tuna, and Hot Beef Summer Sausage.
>
> Mr. Johns is not able to attend Buddhist services because of his work schedule.
>
> The inconsistencies in Mr. Johns's choice of store items calls in question his sincerity in believing he must have the strict vegetarian menu to practice his religion.

Defendant Martin then sent Warden Jeffrey Woods a memorandum stating that plaintiff was not approved for a strict vegetarian diet.

> Mr. Johns was interviewed for the above religious diet by Chaplain Jones. It is difficult for one person to discern the sincerity and intent of another person. Nevertheless, during his interview he listed the titles of the major teachings: Four Noble Truths and the Eightfold Path. However, he provided no explanation of any of these teachings. He explained the necessity for the diet by referring to the First Precept, which forbids the killing of living beings. He said, ". . . to eat the flesh of an animal who suffered and died go against the moral, spiritual and noble path of the Buddha teaching." He said that he cannot eat food prepared using the same utensils used for preparing meat. He provided an adequate explanation of what the diet permits and forbids.
>
> However, Chaplain Jones reports that the applicant's store orders include food items that contain meat, meat derivatives, dairy, or honey. These include tuna, ramen chicken noodles, ramen beef noodles, and ramen chili soup, beef summer sausage, and chocolate iced honey buns. All of these purchases violate the strict vegetarian diet, a diet he states is required based upon his religious beliefs.

> Johns provided very little actual explanation of the teachings of Buddhism, which suggests that he is not seeking to learn and understand the teachings of his chosen religion. Also, his decision to purchase foods that violate the requirements of the strict vegetarian diet does not indicate a sincere intent to actually practice the teachings of Buddhism.
>
> Based upon the information provided, the applicant is NOT APPROVED for the Strict Vegetarian menu and SHOULD NOT be permitted access to the religious menu requested.

Plaintiff filed this lawsuit challenging the constitutionality of the prison policy directives that use questions to test a prisoner's sincerity for a religious diet (05.03.150, paragraph L) and the policy which allows the prison to remove a prisoner from a religious diet if food in violation of a religious belief is found on the prisoner's person or in the prisoner's cell (05.03.150, paragraph VV). Plaintiff seeks injunctive relief under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and damages under the First Amendment. Plaintiff requests that the court order his placement on a strict vegetarian Buddha diet, that the court enjoin the enforcement of MDOC Operating Procedure 05.03.150A(L)(1), (Q)(4) and MDOC Policy Directive 05.03-150(VV). Plaintiff requests compensatory damages of $75,000 each from defendants Martin and Jones and punitive damages of $100,000 from each defendant.

Defendants have moved for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but

must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Jones argues that he is entitled to summary judgment because he had no authority to authorize a strict vegetarian diet. Defendant Jones asserts that all he did was make a recommendation to defendant Martin. Defendant Jones asserts that he lacked personal involvement. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984). Defendant Jones had more than a passive role in denying plaintiff a strict vegetarian diet. Defendant Jones conducted an initial interview and made a recommendation that included gathering additional facts regarding what plaintiff had purchased from the prison store. The court

can only conclude that the recommendation made by defendant Jones carried some weight. Otherwise, there would be no purpose for defendant Jones's involvement and it would not be necessary for him to conduct the interview or make a recommendation. Defendant Jones undertook more than simply a ministerial task in this matter. Defendant's argument, in the opinion of the undersigned, clearly lacks merit.

Defendants claim that plaintiff's rights under the First Amendment and the RLUIPA were not violated. While "incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain First Amendment protection to freely exercise their religion, *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987), subject to reasonable restrictions and limitations related to legitimate penological interests. *Id.* at 350-53; *accord Turner v. Safley*, 482 U.S. 78, 89 (1987). First Amendment protection extends to all religious beliefs, and guaranties "religious liberty and equality to the infidel, the atheist, or the adherent of a non-Christian faith . . ."). *County of Allegheny v. ACLU*, 492 U.S. 573, 615 (1989).

To state a free exercise claim, a plaintiff must allege facts from which an inference may be drawn that the government has placed "a substantial burden on the observation of a central religious belief or practice." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). Likewise, the RLUIPA provides in pertinent part that, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden . . ." furthers "a compelling governmental interest" and is done so by the least restrictive means. 42 U.S.C. § 2000cc-1(a) (1)-(2). The RLUIPA's institutionalized-persons provision alleviates exceptional government-created burdens on private religious exercise. *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005).

In relevant part, the RLUIPA prohibits any government from imposing a "substantial burden on the religious exercise" of a prisoner, unless such burden constitutes the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000cc-1(a). The term "religious exercise" "includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7). While this definition of religious exercise is broad, it does require that Plaintiff's religious beliefs be "sincerely held." *See, e.g., Episcopal Student Foundation v. City of Ann Arbor*, 341 F.Supp.2d 691, 700 (E.D. Mich. 2004) (citation omitted); *Lovelace v. Lee*, 472 F.3d 174, 187 n.2 (4th Cir. 2006) (citations omitted). However, prison officials may not inquire into whether a particular belief or practice is "central" to a prisoner's religion. *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (recognizing that "the truth of a belief is not open to question, rather the question is whether the objector's beliefs are truly held").

While the phrase "substantial burden" is not defined in the RLUIPA, courts have concluded that a burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water Church of God v. Charter Township of Meridian*, 258 Fed. Appx. 729, 733-34 (6th Cir., Dec. 10, 2007) (citations omitted); *see also*, *Marshall v. Frank*, 2007 WL 1556872 at *5 (W.D. Wis., May 24, 2007) (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)) (a substantial burden is one which renders religious exercise "effectively impracticable"); *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (recognizing that the RLUIPA's institutionalized persons provision was intended to alleviate only "exceptional" burdens on religious exercise).

In *Colvin v. Caruso*, 605 F.3d 282, 295 (6th Cir. 2010), the Sixth Circuit held that the district court erred in denying the plaintiff's motion to amend to include claims that he was

wrongfully removed from the kosher-meal program and was wrongly denied reinstatement. The case for the first time held that Michigan's use of a test to determine whether an inmate knows enough about his religion is improper because it is based on an improper constitutional standard. *Id.* at 298. The focus is not whether a belief is accurate or even logical, the test is whether the prisoner religious believes are sincere. It is error for the MDOC to simply "question [a prisoner] about his faith's major teachings" and base a sincerity judgment on the answers to the MDOC's policy questions. *Id.* The court further suggested that the prison's policy of terminating a religious meal program based on a one-time possession of a non-Kosher item may be unreasonable under the First Amendment and the RLUIPA. *Id.* at 296-97. The court found, however, that the plaintiff's allegations that he was deprived of kosher meals for a short period and occasionally thereafter failed to state a claim as it involved mere negligence. *Id.* at 293.

Nevertheless, defendants and the MDOC have chosen to test prisoners' religious sincerity prior to approving a religious diet. The court recognizes that this is a difficult task. Each request must be based solely on the prisoner's sincerity for the religion and not on a judgment of the prisoner's particular belief. In this case, defendants asked plaintiff three questions and determined that plaintiff's answers did not show a sincere believe in Buddhism. If that was the only factor that defendants used to deny plaintiff his meal request, summary judgment would not be appropriate. Defendants also examined plaintiff's store purchases. Plaintiff's store purchases clearly contradicted his religious beliefs. Plaintiff purchased numerous meat items from the store. Even if plaintiff can casually explain that the purchases were for trade to other inmates and not for his own consumption, plaintiff's behavior exhibits a lack of religious sincerity. As plaintiff explained, the killing of animals is against his beliefs and is the primary reason why he sought a vegetarian diet. Plaintiff cannot excuse his conduct which clearly established a lack of sincerity. If plaintiff truly believed at

the time he requested the Buddhist diet that animals should not be killed, then he would not have purchased meat products for any reason from the prison store. In the opinion of the undersigned, defendants made an appropriate determination that plaintiff was not entitled to a religious diet based upon the totality of factors known by them at the time of their decision. In the opinion of the undersigned, since the defendants made an appropriate and reasonable determination of plaintiff's sincerity when he requested a Buddhist diet, plaintiff's rights under the RLUIPA and the First Amendment were not violated. Moreover, plaintiff cannot challenge the constitutionality of prison procedures which could not have violated his rights. For these reasons, it is also recommended that plaintiff's motion for a preliminary injunction be denied.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (Docket #28) be granted and this case be dismissed in its entirety. It is further recommended that plaintiff's motion for a preliminary injunction (Docket #32), and motion for waiver of bond (Docket #31) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: May 31, 2013